**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

James D. Horner,
Claimant Below, Petitioner

v.)    No. 24-279    (JCN: 2020025626)
                     (ICA No. 23-ICA-497)

Eastern Asphalt Products, LLC,
Employer Below, Respondent

# MEMORANDUM DECISION

Petitioner James D. Horner appeals the March 25, 2024, decision of the West Virginia Intermediate Court of Appeals ("ICA") affirming the October 23, 2023, decision of the Workers' Compensation Board of Review ("Board of Review"), which affirmed separate orders entered by the claim administrator in June and August 2022 granting 4% permanent partial disability for bilateral shoulders and 10% permanent partial disability for the cervical, thoracic, and lumbar spine for a total award of 14% permanent partial disability. Respondent Eastern Asphalt Products, LLC filed a timely response.[1] The issue on appeal is whether the Board of Review properly affirmed the separate awards totaling 14% permanent partial disability. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the ICA's decision is appropriate. *See* W. Va. R. App. P. 21.

In June 2020, while working for the employer, the claimant fell off his truck due to a loose step. Prior to the 2020 injury, the claimant developed back pain after a 2009 motor vehicle accident and injured his shoulders in a 2017 slip-and-fall incident.

Regarding the 2020 injury, the claim administrator held the claim compensable for a sprain to the forearm, elbow, and shoulder. In June 2021, the claimant underwent a left shoulder arthroscopy with a rotator cuff repair, a subacromial decompression, and an insertion of a nonabsorbable pain administration device. In July 2021, the claim administrator added bilateral shoulder sprains; a left shoulder tear of the supraspinatus tendon; and cervical, thoracic, and lumbar sprains as compensable diagnoses. However, the claim administrator also denied the compensability of bilateral shoulder tendonitis and lumbar radiculopathy and/or disc herniation as additional conditions.

---

[1] The claimant is represented by counsel Reginald D. Henry and Lori J. Withrow, and the employer is represented by counsel Jeffrey M. Carder.

The claimant underwent an independent medical evaluation with Joseph E. Grady II, M.D., in March 2022. Dr. Grady found 1% impairment for the right shoulder and 5% impairment for the left shoulder. Regarding the left shoulder, Dr. Grady determined that apportionment was appropriate, attributing 3% impairment to the 2020 compensable injury and 2% impairment to the preexisting left shoulder condition based upon the history of "prior symptoms clinically involving the left shoulder dating back to 2017." Therefore, Dr. Grady gave the claimant a total of 4% impairment for bilateral shoulders. Regarding the claimant's neck and back, Dr. Grady initially found 7% impairment for the cervical spine. Next, Dr. Grady determined that the claimant had 1% impairment for the thoracic spine due to the 2020 compensable injury, apportioning 4% impairment based upon a June 2020 x-ray, which showed wedging at the T11-T12 vertebrae interpreted as representing "some remote injury or degenerative change." Finally, Dr. Grady found that the claimant had 2% impairment for the lumbar spine attributable to the 2020 compensable injury, apportioning 3% impairment to degenerative changes due to a May 2021 MRI, which showed a degenerative disc desiccation at L1-L2. Thus, Dr. Grady gave the claimant a total of 10% impairment for cervical, thoracic, and lumbar sprains.

In April 2022, the Workers' Compensation Office of Judges[2] affirmed the claim administrator's July 2021 decision to deny bilateral shoulder tendonitis and lumbar radiculopathy and/or disc herniation as compensable diagnoses, finding that (1) before the 2020 compensable injury, medical records from March 2017 showed limited range of motion and pain in the claimant's shoulders, and an April 2017 MRI revealed mild supraspinatus tendonitis; and (2) the evidence did not support the addition of either lumbar radiculopathy or lumbar disc herniation to the claim. Subsequently, the claim administrator granted the claimant 4% permanent partial disability for bilateral shoulders in June 2022 and granted the claimant 10% permanent partial disability for his neck and back in August 2022 based upon Dr. Grady's findings from the March 2022 independent medical evaluation.[3]

The claimant underwent an independent medical evaluation with Michael J. Kominsky, D.C. in January 2023. The claimant completed a questionnaire, which indicated that he experienced limitations on his daily activities such as washing his hair, reaching for something on a shelf, lying on his side, and dressing himself. Dr. Kominsky found 3% impairment for the right shoulder and 8% impairment for the left upper extremity (both the left shoulder and the left elbow). Regarding the claimant's neck and back, Dr. Kominsky gave the claimant 8% impairment for the cervical spine, 5% impairment for the thoracic spine, and 8% impairment for the lumbar spine. Dr. Kominsky determined that apportionment was inappropriate in this claim, stating that before the 2020 compensable injury, the claimant was performing his job at a high level of functioning "with no ongoing complaints of bilateral shoulder pain, left elbow stiffness, or axial spine pain." Dr. Kominsky calculated the claimant's overall impairment as 28% according to the combined values

---

[2] In 2022, during a restructuring of the West Virginia worker's compensation system, the Office of Judges ceased to exist, and the Board of Review took over its functions.

[3] Dr. Grady reported his impairment rating for bilateral shoulders in March 2022 and reported his impairment rating for the cervical, thoracic, and lumbar spine in July 2022.

chart of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*").[4]

The claimant underwent an independent medical evaluation with Prasadarao B. Mukkamala, M.D., in March 2023. Dr. Mukkamala found that the clamant had 2% impairment for the right shoulder. Due to "prior issues with the right shoulder documented in the records," Dr. Mukkamala attributed 1% to the preexisting problems and 1% to the 2020 compensable injury. Dr. Mukkamala found that the claimant had 4% impairment for the left shoulder. Like Dr. Grady, Dr. Mukkamala noted that the claimant's problems in the left shoulder began in 2017, apportioning 2% to the preexisting conditions. Dr. Mukkamala attributed 2% impairment to the 2020 compensable injury. Therefore, Dr. Mukkamala gave the claimant a total of 3% for bilateral shoulders. Regarding the claimant's neck and back, Dr. Mukkamala initially found 5% impairment for the cervical spine. Next, Dr. Mukkamala determined that the claimant had 0% impairment for the thoracic spine based upon range of motion measurements and that the claimant had no specific thoracic spine disorder that would qualify for an impairment rating under the AMA *Guides*. Dr. Mukkamala also noted that x-rays showed that the claimant had chronic, preexisting changes in the thoracic spine "not causally related to the [2020] compensable injury[.]" Finally, Dr. Mukkamala found that the claimant had 4% impairment for the lumbar spine attributable to the 2020 compensable injury, apportioning 4% impairment to the prior injury caused by the 2009 motor vehicle accident. Dr. Mukkamala explained that the 2009 injury was significant because, following the motor vehicle accident, the claimant underwent three months of physical therapy. Thus, Dr. Mukkamala gave the claimant a total of 9% impairment for cervical, thoracic, and lumbar sprains.

In October 2023, the Board of Review affirmed the claim administrator's June and August 2022 orders granting the claimant a total award of 14% permanent partial disability for the 2020 compensable injury. The Board found that the primary difference between Drs. Grady's and Mukkamala's reports and Dr. Kominsky's report was Dr. Kominsky's decision not to apportion impairment due to the claimant's preexisting conditions. The Board determined that Dr. Kominsky's report was unreliable because his decision not to apportion impairment was contrary to the medical evidence, finding:

> Medical records dated prior to the compensable injury indicated the claimant had chronic back pain after a [motor vehicle accident] in 2009 and was taking medication for low back pain; that the claimant had chronic and persistent neck pain for which he was referred to a neurosurgeon; and bilateral shoulder pain with [range of motion] being limited in the left shoulder. Thus, the evidence establishes that there is a reasonable basis for apportionment and therefore, the report of Dr. Kominsky is found to be unreliable.

---

[4] West Virginia Code of State Rules § 85-20-65.1 generally provides that the AMA *Guides* be utilized in the calculation of impairment.

Accordingly, the Board of Review concluded that the claimant failed to show that the 14% permanent partial disability award based on Dr. Grady's findings was incorrect.[5] In *Horner v. Eastern Asphalt Products, LLC*, No. 23-ICA-497, 2024 WL 1281110 (W. Va. Ct. App. Mar. 25, 2024) (memorandum decision), the ICA affirmed, finding that the Board's decision was not clearly wrong. *Id.* at *4.

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024); *see Conley v. Worker's Comp. Div.*, 199 W. Va. 196, 199, 483 S.E.2d 542, 545 (1997) (noting that, while legal determinations are reviewed de novo, the "clearly wrong" and "plainly wrong" standards of review apply to evidentiary findings to which deference is given if supported by substantial evidence). West Virginia Code § 23-4-9b provides that, unless there is a permanent total disability, a preexisting disease or injury "shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury." In Syllabus Point 6 of *Duff*, we held that

> [u]nder West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

250 W. Va. at ___, 905 S.E.2d at 530.

On appeal, the claimant argues that there was a period of time between the treatment of his preexisting conditions and the occurrence of the 2020 compensable injury, during which he performed his job without any limitations. Therefore, the claimant asserts that Dr. Kominsky's decision not to apportion impairment was consistent with the medical evidence. The employer counters that apportionment was appropriate in this claim, and the ICA properly concluded that the Board of Review was not clearly wrong in finding Dr. Kominsky's report unreliable due to the claimant's longstanding history of preexisting symptoms and physical limitations related to his bilateral shoulders and his neck and back.

After review, we find that the employer successfully showed that apportionment was proper in this case. The claimant's medical history includes a 2009 motor vehicle accident and a 2017 slip-and-fall incident resulting in injury to his shoulders. While Dr. Grady found that the claimant had only 1% impairment for the right shoulder, Dr. Grady did not apportion that impairment. Dr. Mukkamala also found 1% impairment for the right shoulder. Dr. Mukkamala apportioned another 1% impairment he found for the right shoulder to the claimant's preexisting

---

[5] While Drs. Grady and Mukkamala provided similar impairment ratings, Dr. Grady's overall impairment rating of 14% was higher than the impairment rating provided by Dr. Mukkamala, who found that the claimant had an overall impairment of 12%.

4

conditions documented in the medical records. Drs. Grady and Mukkamala each attributed 2% impairment for the left shoulder to the preexisting conditions, as the medical records also showed a history of the claimant having symptoms in the left shoulder dating back to 2017.

Regarding the neck and back, neither Dr. Grady nor Dr. Mukkamala attributed any of the impairment of the cervical spine to the claimant's preexisting conditions. For the thoracic spine, Drs. Grady and Mukkamala provided similar impairment ratings due to the 2020 compensable injury, 1% and 0% respectively. In finding that the claimant had 1% impairment for the thoracic spine, Dr. Grady apportioned another 4% impairment based upon a June 2020 x-ray, which showed wedging at the T11-T12 vertebrae interpreted as representing "some remote injury or degenerative change." Dr. Mukkamala specifically stated that his 0% impairment rating for the thoracic spine was based on range of motion measurements and clinical findings instead of apportionment. Drs. Grady and Mukkamala each apportioned impairment for the lumbar spine. Dr. Grady attributed 3% impairment to degenerative changes due to a May 2021 MRI, which showed a degenerative disc desiccation at L1-L2. Dr. Mukkamala apportioned 4% impairment to the prior injury caused by the 2009 motor vehicle accident, explaining that the 2009 injury was significant because, following the motor vehicle accident, the claimant underwent three months of physical therapy. Thus, the standards of *Duff* were satisfied in this case. Therefore, we conclude that the Board of Review, as affirmed by the ICA, was not clearly wrong in upholding the claim administrator's June and August 2022 orders granting the claimant a total award of 14% permanent partial disability for the 2020 compensable injury.

Affirmed.

**ISSUED: March 19, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

5